IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 5:17CR50046-001 |
| | ) | |
| RYAN PAYNE | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S REQUEST FOR DOWNWARD VARIANCE

Comes now the United States of America, by and through Duane (DAK) Kees, United States Attorney for the Western District of Arkansas, and for its Response to Defendant's Request for Downward Variance, states:

## BACKGROUND

On January 5, 2018, defendant Ryan Payne pleaded guilty to one count of False Representation of a Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B) and one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1).   The initial Presentence Report (PSR) was prepared on March 6, 2018, and the final report was issued on April 2, 2018.  The defendant raised two objections the PSR, and the government raised two objections to the PSR. This case is currently set for sentencing on May 1, 2018 with no unresolved objections as issue. (*See* PSR Addendum). The parties agree that the Final PSR in this case correctly calculates the advisory sentencing guideline range of 24-30 months for Count Two.[1]

---

[1] By statute, the sentence for Count Three of Aggravated Identity Theft is a mandatory two-year sentence of imprisonment, consecutive to any other sentence imposed. *See* 18 U.S.C. §§ 1028A(a)(1) and 1028A(b)(2) and (3). As acknowledged by the defendant (Doc. 32, p.5), in determining the term of imprisonment for the underlying predicate offense, the Court "shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section." *See e.g. United States v. Guillen-*

On April 17, 2018, the defendant filed a Sentencing Memorandum (Doc. 32) seeking a downward variance from the advisory sentencing guideline range pursuant to 18 U.S.C. § 3553(a).  The government respectfully submits that a downward variance from the advisory sentencing guideline range is not warranted in this case, as discussed below.

## A DOWNWARD VARIANCE FROM THE ADVISORY GUIDELINE RANGE IS NOT WARRANTED

The defendant argues for a variance based on 18 U.S.C. § 3553(a).  In support of a variance, he alleges that he committed the crimes to support his addiction to drugs. (Doc. 32, p. 4).  Further, the defendant claims his crimes were "not a moral issue deserving of heavy punitive measures, but an addict's cry for help." (Doc. 32, p. 7).  The government does not dispute the defendant's addition to drugs but respectfully opposes the defendant's argument that his addiction supports a downward variance from the advisory guideline range.

The Sentencing Guidelines provide the best framework for achieving fair and consistent sentences in the federal criminal justice system. The Supreme Court has held both in *Rita* and *Gall* that the Guidelines, although now advisory, must be given serious consideration in calculating the appropriate sentence. *See Rita v. United States,* 551 U.S. 338 (2007); *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586 (2007).

The ruling in *Rita* makes clear that by using the Guidelines the sentencing judge and the Commission, by statute, are carrying out "the same basic § 3553(a) objectives" and the Commission's Guidelines can be assumed to be a "rough approximation" of a sentence that would "achieve § 3553(a)'s objectives." *Id.* at 2463 and 2465, respectively. The rationale in the

---

*Esquivel*, 534 F.3d 817 (8th Cir. 2008), reversing and remanded for resentencing by the Eighth Circuit when the district judge imposed only a seven-day consecutive term of imprisonment for the predicate offense in addition to the two years for aggravated identity theft on the basis that a consecutive guideline sentence of 10-16 months was "excessive."

*Rita* decision is based on the fact that the Guidelines are a "product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. *Gall* at 46. Furthermore, the *Gall* court found that "[A]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* at 49.

Here, guidelines take into account a sentence that would be consistent with § 3553(a)'s objectives.   It is noteworthy that the defendant's base offense level was only a level 6, but his guidelines range was increased more than twice that due to enhancements for the loss amount (6 levels), sophisticated means (2 levels), unauthorized use of a means of identification unlawfully to produce or obtain any other means of identification (2 levels), and abuse of a position of trust (2 levels). (PSR ¶¶ 55-59).  The defendant does not dispute the applicability of these enhancements to the base offense level. (Doc. 32, p. 2).

<u>**Section 3553(a) Factors Do Not Merit a Variance**</u>

18 U.S.C. § 3553(a) provides that "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph (2) sets forth a number of factors the court must consider when imposing a sentence. The government asserts that a review of these factors (including information in PSR) establishes the defendant should not be entitled to a downward variance and his specific personal and offense characteristics do not establish a basis for a downward variance.

The crimes for which Payne was indicted and convicted are very serious, and appropriately contemplated by the Guidelines. Although Payne asserts he is normally a loving, respectful person and caring father, he chose to disregard his responsibilities in those capacities in 2015 when he defrauded anyone who had the misfortune of placing their trust in him.

The nature and circumstances of the offense indicate Payne was putting his desire for financial gain over the finances of his own family members, including his mother and former sister-in-law. His fraud is far-reaching as he exploited not only family members, but local businesses in his check-fraud scheme, an Auto Shop as part of a fraudulent loan he obtained, and most importantly, the public at large who were required to provide their information to the IRS. And, it should be highlighted that when Payne exploited the personal identifiers of the victim who gave him the flash drive to conduct the audit of his business for the IRS, this victim was required *by law* to turn that information over to Payne in his role as an IRS Revenue Agent. One such victim noted as much, in stating, "By law, I was required to share deeply private and personal information with Mr. Payne. Not only did he steal my identity, but he also put the identities of my family and business associates at risk." (*See* Doc. 30-2).

Furthermore, the defendant attempted to obtain the personal identifying information of countless others as he was in possession of multiple tax forms bearing other individuals' names (PSR ¶ 28) and tried to hire someone to hack an encrypted IRS flash drive (PSR ¶ 32a). Although the defendant suggests that the intended loss amount is excessive when compared with the actual loss, the intended loss amount of $70,321 accurately reflects the financial fraud that he intended to inflict on the victims if not for the victims quick and diligent efforts to monitor and report the identity theft. *See United States v. Hartstein*, 500 F.3d 790, 798 (8th Cir. 2007)(stating Courts must characterize intended loss with reference to a "defendant's actual, subjective intent.").

The history and characteristics of defendant, as set forth in paragraphs 103-131 of the PSR, do not reveal any uncommon adversities. The defendant's parents had a close relationship with him, and he had a "good childhood free from abuse or neglect." (PSR ¶ 103-105). The

defendant received a Bachelor of Science in Business Administration in 2005. (PSR ¶ 26). Although defendant developed a substance abuse problem, according to his employment record, he was gainfully employed up until the commission of this offense in 2015. In fact, he was receiving a salary of $90,000 per year from 2010 to 2015 while employed at the IRS as a revenue agent. (PSR ¶ 130).  Although defendant's criminal history is a Level Three, given his upbringing and family support, one could have reasonably expected it to be nonexistent. There are many defendants this Court encounters that have personal histories of abuse and neglect, others that have severe substance addictions, many if not most that have had little to no education or opportunity to advance themselves in a career, and some that suffer from mental illnesses or infirmities. Defendant is not one of that number.

The government acknowledges the defendant has substance abuse issues. (PSR ¶¶ 121-122). The defendant's criminal history reflects numerous convictions for DWI and drug-related violations. It appears he has had the opportunity for substance abuse treatment and has attended treatment sessions related to alcohol abuse. (PSR ¶¶ 124-125). The defendant would benefit from a lengthy term of incarceration at the Bureau of Prisons in order to take advantage of the drug treatment programs available. The defendant has not demonstrated any unique or uncommon characteristics to his situation as compared to many criminal defendants (particularly those in drug trafficking) who are often facing much higher terms of imprisonment. As there is nothing about defendant's rehabilitative efforts which place the case outside the heartland of cases, the defendant's motion for variance due to substance abuse should be denied. *United States v. Donnelly*, 475 F.3d 946, 956 (8th Cir. 2007).

Indeed, this defendant was able to carry out a sophisticated scheme in which the defendant set up fictitious corporations through the Arkansas Secretary of State's Office and

used taxpayers' personal identifying information to open lines of credit without their knowledge or permission. (See PSR ¶¶ 28-38). In addition, the defendant filed a fraudulent tax return under another identity, produced counterfeit checks using his laptop and check writing software, and falsified a pay statement from the fraudulent corporation River Valley Tax Associates as proof of income and falsified a gas payment printout in order to secure a vehicle loan at Rath Auto. *Id*. The ability to carry out repetitive steps to complete such a sophisticated scheme would seem uncommon if not almost impossible for someone experiencing such debilitating addiction to drugs. As such, this defendant's addiction should not by itself merit a downward variance from the guideline range.

The government contends factors considered in fashioning a sentence that reflect the seriousness of the offenses of conviction, promote respect for the law, and provide just punishment for the offense does not warrant a downward variance. Accordingly, the government argues that a sentence within the advisory guideline range is proper, reflects the collective wisdom of the United States Sentencing Commission, and enables the defendant to receive substance abuse treatment.

WHEREFORE, the government respectfully requests the Court deny the defendant's motion for downward variance and impose a sentence within the advisory guideline range of 24-30 months for Count Two.

Respectfully submitted,

Duane (DAK) Kees
United States Attorney

By: */s/ Sydney L. Butler*
 Sydney L. Butler
Assistant U.S. Attorney
Arkansas Bar No. 2012238

6

414 Parker Avenue
Fort Smith, Arkansas 72901
479-783-5125
E-mail: sydney.l.butler@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I, Sydney L. Butler, Assistant U. S. Attorney for the Western District of Arkansas, hereby certify that on April 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Anna Williams, Attorney for defendant.

*/s/ Sydney L. Butler*

Sydney L. Butler
Assistant U.S. Attorney